```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

EDWARD GRAHAM,                     )
                                   )
        Petitioner,                )
                                   )
                                   )
     v.                            )    No. 12-C-8870
                                   )
Randy Pfister, Acting Warden,      )
                                   )
        Respondent.                )
                                   )

## Memorandum Opinion and Order

Petitioner Edward Graham was convicted on three counts of first degree murder for the September 28, 1996 shooting deaths of Johnny Jones Sr., Marshall Mason, and Erica Chotoosingh. Petitioner challenged his conviction without success in both direct appeals and post-conviction proceedings in the Illinois state courts. Petitioner now seeks a federal writ of habeas corpus. He asserts: that he was deprived of his Sixth Amendment right to effective assistance of counsel both because of errors his counsel made at trial and because he was denied his counsel of choice when the trial court allegedly pressured him into retaining defense counsel; that his counsel labored under a conflict of interest; that his Fifth Amendment rights were violated when the state commented on his post-arrest silence and request for an attorney; and finally, that his Fourteenth Amendment due process rights were violated when the state offered a prior consistent statement at trial. For the reasons that

follow, I deny his petition and decline to issue a certificate of appealability.

I.

The follow facts are taken from the Supreme Court of Illinois's decision affirming petitioner's conviction and sentence on direct appeal, *People v. Graham*, No. 86382, 206 Ill.2d 465, 795 N.E.2d 231, 276 Ill.Dec. 878 (Ill. June 19, 2003), and the Illinois appellate court's decision denying petitioner's request for post-conviction relief, *People v. Graham*, No. 1 10 2351, 2012 Ill. App. (1st) 102351, 972 N.E.2d 701, 361 Ill.Dec. 908 (Ill.App.Ct. May 14, 2012).

In the mid-1980's petitioner met and began delivering cocaine for Johnny Jones Sr., a major Chicago cocaine distributor. On September 28, 1996, Johnny Jones Sr.'s son, Johnny Jones Jr. ("Jones") and his friend Cory Williams, both of whom were asleep in Johnny Jones Sr.'s house, heard the sound of gunfire in the house. Upon investigation, Jones saw petitioner shooting a handgun into victim Marshall Mason's room as well as into his father's room.

Authorities caught up with petitioner and arrested him a month later. During his incarceration in Las Vegas, petitioner had conversations with fellow inmate, Carl Torrence, who would later testify at petitioner's trial that petitioner admitted that he murdered Johnny Jones Sr. According to Torrence, petitioner also confessed that he shot Mason and Chotoosingh.

At trial, petitioner was represented by privately-retained counsel, George Howard. Before jury selection, the trial judge engaged in a colloquy with the prosecutor, defense counsel, and petitioner regarding petitioner's choice of counsel. The State introduced the subject of Howard's involvement in ARDC disciplinary proceedings, which petitioner confirmed on the record that he was aware of. The trial court judge expressed her faith in Howard's abilities to represent petitioner, but made it clear that it was petitioner who must be comfortable with Howard's ability to represent him. Petitioner stated for the record that he believed "[Howard's] very capable of representing me," and disavowed any reservations about his readiness to move forward to trial with Howard.

During the state's case, Jones and Williams testified about what they saw and heard the night of the murders, and Torrence testified about what petitioner confessed to him in Las Vegas.

On direct appeal, the Illinois Supreme Court rejected petitioner's claims that his counsel had a per se conflict of interest, that his Fifth Amendment rights were violated, and that his due process rights were violated when the state offered a prior consistent statement. That court also rejected petitioner's claims that he received ineffective assistance of counsel. In post conviction proceedings, the Illinois appellate court rejected petitioner's claim that he was denied his counsel of choice. The Illinois Supreme Court declined to hear his

petition.

II.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), where a state court adjudicates a constitutional claim on its merits, a federal court may not grant habeas relief unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or … resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Moreover, "[w]hen the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed." *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005) (citing *Lambrix v. Singletary*, 520 U.S. 518, 523, 117 S.Ct. 1517, 137 L.Ed.2d 771 (collecting cases)).

Respondent argues that two of petitioner's claims—that his Fifth Amendment rights to remain silent and to request an attorney, and that his due process rights were violated when the State elicited a prior consistent statement--are procedurally defaulted because the highest state court to review the merits of those claims found that petitioner had failed to preserve those claims at trial and that the failure to do so was inexcusable.

Petitioner urges that the default is excused because he received ineffective assistance of counsel.

**Fifth Amendment Violation and Ineffective Assistance of Counsel**

Petitioner urges that his constitutional right to remain silent and to request an attorney during his post-*Miranda*-warnings detention period was violated when at trial the State commented on his post-arrest silence.  At trial, an assistant state's attorney who interrogated petitioner about the crime testified that petitioner opted to speak to him about the events of the crime, but when asked why witness Jones was identifying him as the shooter, petitioner fell silent. Additionally, in closing arguments, the state revisited the testimony and mentioned that during the interrogation, petitioner asserted his right to counsel.  Petitioner argues that these comments infringe his Fifth Amendment rights as outlined by *Doyle v. Ohio,* 426 U.S. 610, 619 (1976), which holds that the state cannot use a defendant's post-*Miranda*-warning silence or his post-*Miranda*-warning request for counsel as evidence of guilt at trial.

The Illinois Supreme Court found that "the defendant forfeited review of this issue because he never objected to [the state's attorney's] testimony and the State argument at trial and in a post trial motion." *People v. Graham*, 795 N.E.2d 231, 236-37, 206 Ill.2d 465, 475 (2003) ("*Graham*").  That court also rejected petitioner's argument that the forfeiture nevertheless

warranted review because it was plain error to admit that testimony. The court found that admission of that testimony did not implicate the plain error rule, which "allows a reviewing court to consider a putative trial error" even after forfeiture when either "(1) the evidence is closely balanced or (2) the error is 'so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process.'" *Id.* (quoting *People v. Hall*,194 Ill.2d 305, 335, 252 Ill.Dec. 653, 743 N.E.2d 521 (2000)). The Illinois Supreme Court found that neither of the plain error avenues were available to petitioner because of the overwhelming evidence against him.

Because the Illinois Supreme Court declined to reach the merits of petitioner's Constitutional claim because of the independent state procedural bar, my review of that claim is foreclosed. *See Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005) (explaining that federal habeas review is foreclosed when "the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim").

To circumvent the procedural bar, petitioner urges that he received ineffective assistance of counsel when his attorney failed to preserve his *Doyle* issue for review. I will review that claim on its merits. To prevail on an ineffective

assistance of counsel claim, petitioner must meet the well-known, two-prong standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), under which he "must show both that his lawyer's performance fell below an objective standard of reasonableness as measured by prevailing professional norms, and also that the petitioner suffered prejudice as a result of counsel's errors." *Pole v. Randolph*, 570 F.3d 922, 940 (7th Cir. 2009). If petitioner fails to make an adequate showing on either component, I need not consider the other before rejecting his claim. *Id.* at 934 (citing *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052 and *Pearson v. Callahan*, 555 U.S. 223, 241, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

The Illinois Supreme Court correctly identified *Strickland* as the standard and first found that petitioner was unable to show any prejudice from the inclusion of the evidence he alleged violated his Fifth Amendment rights. The court analyzed the "strong evidence" of petitioner's guilt, including convincing eyewitness testimony. It likewise characterized the evidence that petitioner requested an attorney and that he stopped speaking during interrogation as "minor" in the face of the overwhelming evidence against him. Ultimately, it found that there was no prejudice from the testimony and then declined to analyze whether counsel's performance was deficient since *Strickland* requires petitioner to prove both.

From a review of the record, I cannot say that the state court determination that petitioner suffered no prejudice due to counsel's performance was an unreasonable application of *Strickland*. The evidence presented against petitioner included the testimony of eyewitness Jones, as well as petitioner's flight to Las Vegas under an assumed name, and additional testimony corroborating the events that transpired on the night of the murders. Because the petitioner has not shown a reasonable probability that the outcome of his trial would have been different had the evidence about his attorney request and silence during the interrogation, he has not established prejudice under *Strickland*. *Pole*, 570 F.3d at 943.

**Due Process Violation and Ineffective Assistance of Counsel**

Petitioner also argues that his due process rights were violated when the State elicited a prior consistent statement from the state's attorney about what Jones said he saw the night of the murders. Petitioner objects to that statement because he argues that it repeated earlier testimony offered by Jones that he had seen petitioner "shooting people, or shooting in the house." Respondent argues that this claim was procedurally defaulted because trial counsel failed to preserve the argument for appeal. The Illinois Supreme Court agreed, stating that upon hearing the testimony at trial, petitioner's attorney "however, made no objection," *Graham*, 206 Ill.2d at 478, and proceeded to

analyze whether that failure was inexcusable due to ineffective assistance of counsel.

As above, the Illinois Supreme Court rejected petitioner's due process claim, finding that his attorney had failed to object and preserve the issue for appeal. It declined to review the merits of his due process claim since the issue had not been preserved for appeal. That decision likewise forecloses my review of the merits of that claim, since the decision rested on state procedural grounds. *Miranda*, 394 F.3d at 991.

Here again, petitioner argues that his trial counsel's failure to preserve this issue for appeal amounted to ineffective assistance of counsel, and thus again, he must face the two-pronged test of *Strickland,* which requires him to prove both "that his lawyer's performance fell below an objective standard of reasonableness as measured by the prevailing professional norms, and also that the petitioner suffered prejudice as a result of counsel's errors." *Pole*, 570 F.3d at 940. The Illinois Supreme Court refused to find that trial counsel's performance fell below the reasonable objective standards. Specifically, the state court held that "[d]efense counsel's failure to object to trial testimony may be a matter of strategy and does not necessarily establish substandard performance." *Graham*, 206 Ill.2d at 478-479. It went on to explain that trial counsel's decision not to object to the testimony might have been strategic

because it corroborated the defense theory that Jones did not actually see petitioner shoot the victims. It also noted that defense counsel elicited similar testimony from the state's attorney on cross-examination, *id.* at 479, and referred to *People v. Payne,* 98 Ill.2d 45, 50, 74 Ill.Dec. 542, 456 N.E.2d 44 (1984), noting its rule that "a defendant who invites or acquiesces to the admission of improper evidence cannot complain." Thus, the Illinois Supreme Court was unwilling to find that petitioner was deprived of effective assistance of counsel.

"Under *Strickland*, our review of defense counsel's performance is 'highly deferential'; [petitioner] must 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Woolley v. Rednour*, 702 F.3d 411, 422-423 (7th Cir. 2012) (citing *Strickland*, 466 U.S. at 689). Here, the Illinois Supreme Court reasonably concluded that trial counsel's failure to object was part of his trial strategy, since the testimony supported the defense's theory of the case. Without overcoming the presumption that counsel's decision not to object comported with his overall defense strategy, petitioner cannot establish that his counsel's performance fell below the standards articulated in *Strickland*.

**Trial Counsel's Conflict of Interest**

Petitioner also argues that he was denied effective assistance of counsel because his trial attorney, George Howard ("Howard"), labored under a per se conflict of interest. To support this claim, petitioner points to a call that Howard received from Jones' uncle immediately after the murders asking Howard to go to the jail where Jones was being interrogated by the police. Even though Howard and Jones never spoke, exchanged money, or signed a contract, petitioner characterizes the relationship between them as "attorney-client," and claims that it was a per se conflict, since Jones ended up as a star witness against petitioner at trial.

When evaluating this claim, the Illinois Supreme Court identified the correct legal standard, *Wood v. Georgia*, 450 U.S. 261, 271 (1981), which holds that "[a] criminal defendant's sixth amendment right to effective representation includes the correlative right to conflict-free representation." *Graham*, 206 Ill.2d at 472. The Illinois Supreme Court explained that under the rule articulated in *Wood v. Georgia,* a defendant's conviction must be reversed if "(1) defense counsel has an actual or potential conflict of interest stemming from a previous or current commitment to a party with interests adverse to the defendant, and (2) the defendant does not waive that conflict." *Id.* It also acknowledged that petitioner was entitled to

"undivided loyalty from defense counsel," which prevents defense counsel from representing a party which has interests that conflict with his. *Id*. It ultimately found, however, that Howard "had no relationship—attorney-client or otherwise—with Johnny [Jones]," noting that "[t]he record is devoid of any evidence that Johnny, a 22-year-old adult on the night of the murders, agreed to let Howard represent him, and we find no indication that Johnny's uncle summoned Howard at Johnny's behest." *Id.* at 474.

In view of the lack of evidence that any relationship was established between Howard and Jones, I cannot say that the Illinois Supreme Court's decision was unreasonable. Petitioner has failed to demonstrate that his trial counsel's loyalty was divided or that he was deprived of "representation that is free from conflicts of interest," as there was no relationship between Howard and Jones. *Wood*, 450 U.S. at 271. Without establishing that there was any relationship between them, petitioner cannot establish that Howard labored under a constitutionally impermissible conflict of interest.

**Sixth Amendment Right To Counsel of Choice**

Petitioner finally argues that he was denied his Sixth Amendment right to counsel when, on the first day of trial before jury selection, the State brought up the ARDC disciplinary proceedings pending against Howard. During colloquy that

followed, petitioner claims that the trial judge unduly influenced him to proceed with Howard as his attorney, despite the pending ARDC matters, because she stated that she had confidence in Howard's abilities to represent petitioner, noting that he has a "legendary" reputation around the country. During his post-conviction research, petitioner learned that Howard had a history of problems stemming from clients claiming he had neglected their cases. Petitioner now claims that had the trial judge not unduly influenced him to keep Howard as his attorney or had he known about the full extent of the disciplinary proceedings against him, he would never have retained Howard.

 This claim was last adjudicated by the Illinois appellate court in post-conviction proceedings. *People v. Graham*, 972 N.E.2d 701 (Ill.App.Ct. 2012) ("*Graham II*"). In that decision, the Illinois appellate court thoroughly reviewed and quoted from the trial transcript, analyzing the conversation among the prosecutor, the trial judge, Howard, and petitioner. It noted that the "trial court gave its personal opinion that it had confidence in all the attorneys involved, including Mr. Howard, who it stated had a 'legendary' reputation in the country," but also that the trial court emphasized that the issue was not whether the trial court had any issues with Mr. Howard, but rather "whether petitioner had any such reservations." *Graham II*, 972 N.E.2d at 713. Ultimately, the Illinois appellate court rejected petitioner's claim, because it found that the trial

court did not pressure petitioner, it merely offered its opinion on Mr. Howard's reputation. It also rejected petitioner's argument that he was entitled to all of the details regarding disciplinary actions against his counsel before proceeding to trial.

The United States Supreme Court has held that an element of the Sixth Amendment right to counsel is "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006). That is, the Sixth Amendment "commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *Id.* at 146 (explaining that the right to counsel of choice is violated when it is deprived erroneously). Here, the record shows that the trial court asked petitioner whether he believed Howard was capable of representing him, and he stated that Howard was "very capable." The trial court subsequently asked him three more times if he had any doubts about Howard's abilities. To each inquiry, petitioner affirmed his willingness to have Howard represent him. Therefore, it was not unreasonable for the Illinois appellate court to find that petitioner had announced his approval of Howard at the outset of the trial, and therefore that his claim that he was deprived his counsel of choice was without merit.

The Illinois appellate court also acknowledged that petitioner's claim included an "implicit" argument that he was entitled to all the details of his counsel's disciplinary proceedings. While there is no Supreme Court precedent governing the level of detail to which a criminal defendant is entitled to know about his counsel's disciplinary actions, the Illinois appellate court's decision comports with Sixth Amendment jurisprudence. The record supports the conclusion that petitioner was "certain" he wanted Howard to represent him and that he believed Howard was "very capable," and thus Howard's subsequent representation of petitioner foreclosed any claim that he was denied the right to the counsel of his choice.

III.

For the foregoing reasons, petitioner's request for a writ of habeas corpus is denied. For the same reasons, I conclude that petitioner has not made "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c) and decline to issue a certificate of appealability.

ENTER ORDER:

Dated: July 29, 2013

**Elaine E. Bucklo**
United States District Judge